FILED'05 APR 10 10:15USDC-ORM

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

NICHOLAS W. GIVENS,                                      CV. 07-829-PA

        Petitioner,

    v.                                                  OPINION AND ORDER

JEAN HILL,

        Respondent.


        AMY BAGGIO
        Office of the Federal Public Defender
        101 SW main Street, Suite 1700
        Portland, OR  97204

            Attorney for Petitioner

        JOHN KROGER
        Attorney General
        JACQUELINE SADKER
        Oregon Department of Justice
        1162 Court Street, NE
        Salem, OR  97301

            Attorneys for Respondent

1 - OPINION AND ORDER

Panner, Judge.

Petitioner, an inmate at Snake River Correctional Institution, brings this habeas corpus action pursuant to 28 U.S.C. § 2254. He challenges the legality of his 2000 state court convictions, alleging he received ineffective assistance of counsel. For the reasons set forth below, the Amended Petition for Writ of Habeas Corpus (#24) is DENIED.

## BACKGROUND

Petitioner, 21 years old at the time of his convictions, had a history of drug and alcohol abuse dating from when he was a teenager. (#25, Petr.'s Mem. at 2.) With the use of drugs, he developed signs of mental illness. Beginning in 1999, he repeatedly sought care at hospital crisis centers after cutting himself in attempts at suicide. (*Id.* at 2-6.) On February 26, 2000, after receiving care at a hospital crisis center, Petitioner was transferred to Pacific Gateway Hospital ("Gateway") for mental health treatment, which included electroconvulsive treatment ("ECT") by Dr. Maletzky. (*Id.* at 6.) Petitioner received seven ECTs from March 14 through March 24. (*Id.*)

While at Gateway, Petitioner showed some improvement in his mental health and received privileges to go out on pass on several occasions. (Respt.'s Ex. 113, Gateway Progress Notes and Discharge Summary.) On March 26, 2000, upon returning from an outing, Petitioner was confronted by staff for possessing contraband (matches). He became angry with the staff, signed out of Gateway

2 - OPINION AND ORDER

against medical advice, and left with a girlfriend who had agreed
to supervise him.  (#25, Petr.'s Mem. at 7.)

Despite having been cautioned by Gateway staff to stay with
Petitioner at all times, and agreeing to do so, the girlfriend left
Petitioner at the Gateway Transit Center.  (*Id.*)  Petitioner
proceeded to buy methamphetamine and then tried to locate his
mother, but she had moved.  (*Id.*)  He went to his former middle
school, took drugs, and spent the rest of the night alone on the
athletic field.  (*Id.* at 7-8.)  The next morning, Petitioner
entered a nearby convenience store while the owner, Ms. Choi, was
preparing the store for opening.  (Respt.'s Ex. 103 at 11-13.)
Petitioner had been a customer for several years and asked Ms. Choi
if she could show him how to work the store to prepare him for a
job the next day.  (*Id.*)  She declined and Petitioner left,
returning a short time later claiming he wanted to buy a hat.  (*Id.*
at 14-15.)  Ms. Choi retrieved a hat using a long stick and
Petitioner pulled out his wallet, but he had no money and left.
(*Id.* at 16.)  After entering and leaving a few times, Petitioner
returned and again asked for a hat.  While Ms. Choi reached for a
hat using the stick, he attacked her: choking her with a strap,
dragging her to the back of the store and punching her in the face.
(*Id.* at 17-20.)  Ms. Choi was able to wrestle free and flee to the
parking lot where she sought help from passing motorists.  (*Id.* at
27-34.)  Petitioner exited the store with the stick and threatened

Ms. Choi before leaving. (*Id.* at 46-64.)    Police apprehended Petitioner a short time later and brought him back to the store where witnesses and Ms. Choi confirmed he was the individual who attacked her. (*Id.* at 69-70.)  Petitioner confessed to the attack during interrogation, but made inconsistent statements with respect to some of his actions and his state of mind. (#25, Petr.'s Mem. at 9; Respt.'s Ex. 114.)

Petitioner was charged with Attempted Aggravated Murder (Count 1), Kidnaping in First Degree (Count 2), Robbery in the First Degree (Count 3), and Assault in the Second Degree (Count 4). (Respt.'s Ex. 102.)  In October 2000, Petitioner waived his right to a jury trial and proceeded to a bench trial. (Respt.'s Ex. 103 at 3.)  At trial, Ms. Choi, three witnesses who assisted her, and two police officers who responded to the incident and interviewed Petitioner testified.    Transcripts and tapes of Petitioner's interrogations were also admitted into evidence.

The trial court acquitted Petitioner of Attempted Aggravated Murder, but found Petitioner guilty on Counts 2, 3, and 4, finding these charges "slam dunk." (Respt.'s Ex. 103 at 38-45.)    In anticipation of sentencing, the court addressed the parties as follows:

> I found this guy not guilty on Attempted Aggravated
> Murder.  That does not mean for one solitary second I
> don't think he's a scary guy.  Anybody that cares so
> little about himself or anybody else and acts the way he
> did scares me a lot.  So there's no doubt in my mind if
> I was to proceed [with sentencing] today unless I heard

something truly startling that he is going to get 180
months. That's 15 years.

Now, I'm not saying if I find something startling, I may
not do something different. The reason it's not more is
that I don't have a consistent pattern of behavior prior
to this time. If I had any prior record, I would max
him. I don't. That's where I'm going now.

In doing so, I'm assuming that he needs to be separated
from society until he gains significantly more maturity
or something. So that's where I am.

* * *

What I'm telling you is that after listening to all of
this and understanding that there is some evidence from
the file itself of some psychiatric issues, I would still
do this because that may make me feel sorry for the
defendant and how he got here, but it doesn't make him
less dangerous. Okay?

(Respt.'s Ex. 103 at 46-47.) At the State's request and with

Petitioner's consent, the court proceeded to sentencing. (*Id.* at

48.) The State argued for consecutive sentencing on all three

counts, and Petitioner sought concurrent terms, arguing the crimes

in Counts 2 and 4 were incidental to the robbery. (*Id.* at 49-52.)

The court sentenced Petitioner under Measure 11 to 90 months

on Count 3 (Robbery in the First Degree), to 90 months on Count 2

(consecutive to Count 3), and to 70 months on Count 4 (concurrent

to Count 2, consecutive to Count 3), for a total of 180 months

imprisonment. (*Id.* at 52-53.) The court based the consecutive

terms on Or. Rev. Stat. § 137.123 (5)(a) and (b).[1] (*Id.* at 52,57.)

---

[1]ORS § 137.123 (5) provides:
The court has discretion to impose consecutive terms of
imprisonment for separate convictions arising out of a continuous
and uninterrupted course of conduct only if the court finds:

Petitioner directly appealed his convictions, but on his motion the case was dismissed. (Respt.'s Ex. 104.) Petitioner then filed for post-conviction relief ("PCR"), raising numerous claims of ineffective assistance of counsel. (Respt.'s Ex. 105.) On the initial PCR trial date, September 9, 2003, the PCR court granted Petitioner's uncontested motion for a continuance due to issues with getting Petitioner's medical records to the State. (Respt.'s Ex. 117 at 1-3.)

Petitioner's PCR trial was held December 23, 2003. Although PCR counsel initially sought another continuance due to trouble he was having with the case, PCR counsel proceeded after finding an affidavit from Dr. Maletzky. (*Id.* at 5-9.) The affidavit described the side effects of ECT, stated trial counsel had not contacted him, and detailed what his testimony would have been had he been called to testify. (Respt.'s Ex. 124.) Dr. Maletzky's affidavit was faxed to the court and admitted without objection,

---

(a) That the criminal offense for which a consecutive sentence is contemplated was *not merely an incidental violation* of a separate statutory provision in the course of the commission of a more serious crime but rather was an indication of defendant's willingness to commit more than one criminal offense; or

(b) The criminal offense for which a consecutive sentence is contemplated *caused or created a risk of causing greater or qualitatively different loss, injury or harm to the victim* or caused or created a risk of causing loss, injury or harm to a different victim than was caused or threatened by the other offense or offenses committed during a continuous and uninterrupted course of conduct. (Emphasis added.)

but the issues it raised prompted the PCR court to take the case under advisement. (Respt.'s Ex. 117 at 36.) Ultimately, the PCR court denied relief. (Respt.'s Ex. 118.) Petitioner appealed but the Oregon Court of Appeals affirmed without opinion, and the Supreme Court denied review. (Respt.'s Exs. 123, 122.)

In his Amended Petition for Writ of Habeas Corpus (#24) Petitioner presents one ground for relief alleging ineffective assistance of trial counsel when counsel failed to present the testimony of the physician who administered ECT in the days preceding Petitioner's criminal acts. (#24, Pet. at 3.)

**DISCUSSION**

**I.    Standards**

A habeas petitioner whose claim was adjudicated on the merits in state court is not entitled to relief in federal court unless he demonstrates that the state court's adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d). The last reasoned decision by the state court is the basis for review by the federal court. *See* *Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Franklin v.*

*Johnson*, 290 F.3d 1223, 1233 n. 3 (9th Cir. 2002). Here, it is the PCR trial court decision.

A state court decision is an "unreasonable application of clearly established Supreme Court law when the state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the case." *Lambert v. Blodgett*, 393 F.3d 943, 974 (9th Cir. 2004), *cert. denied*, 126 S.Ct. 484 (2005). "[I]t is the habeas applicant's burden to show that the state court applied [the law] to the facts of his case in an objectively unreasonable manner." *Woodford v. Visciotti*, 537 U.S. 19, 24, 25 (2002).

Under 2254(d)(2), "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless *objectively unreasonable in light of the evidence presented in the state-court proceeding*." *Miller-el v. Cockrell*, 537 U.S. 322, 340 (2003) (emphasis added). In reviewing the state court decision, "[a] federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable." *Taylor v. Maddox*, 366 F. 3d 992, 999 (9th Cir. 2004). This is a standard that will be met in few cases. *Id.* at 1000. Habeas relief may be granted when an intrinsic review of the state court record reveals the state court decision is based on an unreasonable determination

of the facts because the fact-finding process is flawed. *Id.*
Examples of a flawed process include: making evidentiary findings
without holding a hearing, misstating the record, ignoring the
record, misapprehending the evidence presented. *Id.* at 1000-01.

If the state court's fact-finding process survives the
intrinsic review, the state court findings are presumed to be
correct. *Id.* To rebut the presumption of correctness a petitioner
must present new evidence that "amounts to clear and convincing
proof that the state-court finding[s] [are] in error." *Id.* (citing
28 U.S.C. 2254(e)(1)).

Generally, a claim of ineffective assistance of counsel is
governed by the principles articulated in *Strickland v. Washington*,
466 U.S. 668 (1984). Under *Strickland*, a petitioner must prove his
counsel's performance fell below an objective standard of
reasonableness and that there is a reasonable probability that, but
for counsel's unprofessional errors, the result of the proceeding
would have been different. *Bell v. Cone*, 535 U.S. 685, 695 (2002);
*Williams*, 529 U.S. at 390-91; *Strickland*, 466 U.S. at 687-88. "A
reasonable probability is a probability sufficient to undermine
confidence in the outcome." *Strickland* 466 U.S. at 694. "Not
every error that conceivably could have influenced the outcome
undermines the reliability of the results of the proceeding." *Id.*
at 693. Moreover, "[j]udicial scrutiny of counsel's performance
must be highly deferential." *Id.* at 689. The reasonableness of

counsel's conduct must be evaluated in light of the facts of the case and the circumstances at the time of representation. *Id.* at 690. A failure to prove either deficient performance or prejudice will cause the claim to fail. *Id.* at 697.

## II. Analysis

Petitioner alleges ineffective assistance of counsel when trial counsel failed to make contact with Dr. Maletzky. Petitioner contends no deference is owed the state PCR court findings on his ineffectiveness claim "because they were based on a factually inaccurate affidavit of trial counsel" and "the state court ignored the fact, and content, of Dr. Kolbell's report, which proved trial counsel was (1) wrong in claiming Dr. Kolbell never wrote a report (and therefore his evaluation was unfavorable) and (2) wrong in claiming to be unaware of [Petitioner's] mental health problems when they were reviewed in Kolbell's report." (#31, Petr.'s Reply at 11.) Petitioner seeks to expand the record, arguing circumstances beyond his control prevented him from presenting evidence to the PCR trial court that trial counsel's affidavit was erroneous with respect to counsel's knowledge of Petitioner's ECT, and had the PCR court been informed of the erroneous information relief would have been granted. (#25, Mem. at 26-27; #31, Reply at 13.) Petitioner contends expansion of the record "is appropriate considering what trial counsel really knew versus what the state represented he knew in the PCR proceedings." (*Id.*)

A.    __Expansion of the Record__ / __Evidentiary Hearing__

Petitioner submits the following documents for consideration by this court:

Exhibit A:  Multnomah Circuit Court Case Register – criminal trial

Exhibit B:  Oregon Department of Human Services cover letter to Judge Frantz presenting the Oregon State Hospital (OSH) report of Petitioner's evaluation.

Exhibit C:  Trial counsel's September 21, 2000, Memo to File regarding receipt of the OSH evaluation and his forwarding it to Dr. Kolbell.

Exhibit D:  Trial counsel's September 19, 2000, cover letter to Dr. Kolbell requesting he review the enclosed OSH evaluation, that they discuss it, that he will likely ask for a report.

Exhibit E:  Dr. Kolbell's September 19, 2000, unsigned report of Petitioner psychological evaluation conducted May 10 and May 22, 2000.

Exhibit F:  October 26, 2000, fax to trial counsel of Dr. Kolbell's signed September 19, 2000, report.

Exhibit G:  Malheur County Court's Case Register – PCR proceeding.

Exhibit H:  Trial counsel's December 26, 2003, fax cover sheet to the State Trial Division presenting Dr. Kolbell's report, and stating he and Dr. Kolbell "recollect our decision that his testimony would not establish a mental state defense in this case, and under this circumstance it would be my usual practice to direct that no report be written regarding this issue."

Exhibit I:  Trial counsel's September 18, 2005 response letter to the Oregon State Bar, Assistant General Counsel regarding Petitioner's bar complaint. Counsel describes the circumstances of the drafting of his affidavit which contained erroneous information.

Exhibit J:  Trial counsel's November 30, 2005, response to the Oregon State Bar, General Counsel's November 11, 2005, letter regarding Petitioner's bar complaint. Trial

> counsel reiterates the circumstances surrounding his affidavit, and provides details of discussions with Dr. Kolbell regarding a mental health defense in light of Petitioner's ECT and ingestion of methamphetamine.
>
> Exhibit K: January 3, 2006, letter to Petitioner from the Oregon State Bar's General Counsel dismissing his complaint against trial counsel.

(#25, Petr.'s Mem.) Respondent does not object to Petitioner's Exhibits A, E, F and G, and, thus, they will be included in the record. However, the Court will not expand the record to include Exhibits B, C, D, H, I, J, and K.

Rule 7 of the Rules Governing § 2254 Cases provides that if the petition is not dismissed summarily, "the judge may direct the parties to expand the record by submitting additional materials relating to the petition." However, because Petitioner asks the court to evaluate his claim of constitutional error in light of evidence not presented to the state court decision maker, he must meet the evidentiary hearing requirements of 28 U.S.C. § 2254(e)(2). *Holland v. Jackson*, 542 U.S. 649, 653 (2004) (§ 2254(e)(2) requirements apply when a prisoner seeks relief based on new evidence, even where he does not request an evidentiary hearing).

Petitioner is not entitled to an evidentiary hearing unless he diligently attempted to develop the evidence in state court, but was unable to do so. *Williams v. Taylor*, 529 U.S. 420, 433-38 (2000). If Petitioner failed to develop the evidence, an evidentiary hearing is permitted only if his claim relies on: 1) a

new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or 2) a factual predicate that could not have been previously discovered through the exercise of due diligence. 28 U.S.C. § 2254(e)(2)(A)(i) and (ii). *In addition,* the facts underlying the claim must be "sufficient to establish by clear and convincing evidence, that but for constitutional error, no reasonable fact finder would have found the Petitioner guilty of the underlying offense." 28 U.S.C. § 2254(e)(2)(B). In this case, the facts must be sufficient to establish by clear and convincing evidence that but for trial counsel's failure to contact Dr. Maletzky, Petitioner would not have been found guilty of the underlying offenses.

Petitioner is correct that trial counsel's affidavit contained inaccuracies. However, the Court is not convinced circumstances beyond Petitioner's control prevented him from presenting evidence of these errors to the PCR court. Trial counsel's affidavit is dated September 4, 2003, and was submitted to the PCR court as Respondent's Exhibit 104 on or about September 8, 2003. (Respt.'s Ex. 112 at 5; Ex. 108; Petr.'s Ex. G at 3.) In the PCR trial in December 2003, Petitioner challenged the accuracy of trial counsel's affidavit testifying, "I don't know why he's saying the report wasn't written because I have a report from September of 2000, one month before trial, that gave a final diagnosis." (Respt.'s Ex. 117, PCR Tr. at 21.) Thus, Petitioner had proof

trial counsel's affidavit was erroneous with respect to Dr. Kolbell not having written a report, yet there is no evidence he objected to the affidavit, or that he attempted to contact trial counsel or otherwise diligently pursue the matter. Nor did Petitioner draw the PCR court's attention to Dr. Kolbell's report, which had been submitted as an exhibit. (*See* Respt.'s Ex. 108; Petr.'s Ex. G at 3.)

In any event, Petitioner's documents do not establish by clear and convincing evidence that, but for counsel's failure to contact Dr. Maletzky, no reasonable fact finder would have found Petitioner guilty of the underlying offense. The documents only show Dr. Kolbell wrote and sent a report to trial counsel and thus counsel was made aware of the ECTs, that trial counsel investigated but rejected the mental disease/defect defense strategy after consulting with his expert, (Petr.'s Exs. H-J), and that Dr. Kolbell could not testify in support of a mental defense based on the residual effects of ECTs given Petitioner's voluntary intoxication with Methamphetamines. (Petr.'s Ex. J.) Therefore, Petitioner's request to expand the record with Exhibits B, C, D, H, I, J and K is denied, as is Petitioner's request in the alternative for an evidentiary hearing.

### B.    **State PCR Court Findings**

The PCR court findings of fact can be characterized as follows:

• Dr. Maletzky was never contacted by trial counsel.

- At the time Petitioner was released from Gateway he was in a temporary state of confusion induced by the ECT.

- Had Dr. Maletzky been called to testify, he would have testified:
  - lingering effects of ECT last between ten days and two weeks, and would have included confusion and memory loss;
  - while ECT may not have affected Petitioner's ability to tell right from wrong, the side effects would have impaired Petitioner's ability to appreciate the consequences of his actions;
  - Petitioner's decision making function would have been impaired and his thought processes would not be sequential.

- Trial counsel saw a mental disease or defect defense as the only hope for acquittal.

- Both trial counsel and the State had Petitioner evaluated and no mental disease/defect defense was forthcoming.

- There is no evidence in the record of why Dr. Maletzky was not contacted.

- The trial judge relied on Petitioner's interview with police to get a sense of Petitioner's mental state at the time of his crimes.

- The trial judge found the charges on which he found Petitioner guilty "slam dunk."

- The trial judge relied on Petitioner's interview with police in concluding Petitioner did not have the intent necessary to convict on the attempted murder charge.

- Had Dr. Maletzky testified, his testimony would have been significantly impeached by his statements in the Gateway Discharge Summary.

- Given the transcripts of the police interviews, it was inconceivable that Dr. Maletzky's opinion as to Petitioner's state of mind at the time of the crimes would carry any significant weight with the trial court.

(Respt.'s Ex. 118.)

Petitioner contends no deference is owed to the PCR court's findings because they are based on an affidavit that contained errors and the PCR court ignored the existence of, and evidence in Dr. Kolbell's report. (#31, Petr.'s Reply at 11.) Petitioner also contends the PCR court ignored the content of Dr. Maletzky's affidavit as to Petitioner's state of confusion. (*Id.* at 4.) Based on the record, the Court finds Petitioner's arguments lack merit.

During the PCR trial proceeding the PCR court stated, "as you well know I read all this material before the hearing so I've been through everything that's been supplied here." (Respt.'s Ex. 117, PCR Tr. at 8.) Defendant's Exhibit List reveals the PCR court had received Petitioner's Deposition Transcript, letters from the Oregon Department of Justice requesting production of documents, trial counsel's affidavit, the trial transcript, excerpted records of Petitioner's hospital admissions from August 1999 through March 2000, police reports, Dr. Kolbell's evaluation, and the OSH evaluation. (Respt.'s Ex. 108.)

In its opinion letter, the PCR trial court states it took the matter under advisement "to review the record and the testimony in light of the affidavit of Dr. Maletzky that was received at the hearing and which had not previously been identified as an exhibit for the Petitioner." (Respt.'s Ex. 118 at 3.) The PCR court then presented the following detailed analysis of Petitioner's claim.

From my perspective *the three key statements in Dr. Maletzky's affidavit are:*
1) He was never contacted by Petitioner's trial attorney;
2) At the time of Petitioner's release he was in a temporary state of confusion induced by the ECT treatment he had received, and
3) If he had been contacted he would have testified that the [sic] generally the lingering affects [sic] of the ECT last between ten days and two weeks; the effects would have included confusion and memory loss; that while the ETC [sic] may not have affected Petitioner's ability to tell right from wrong, these effects would have severely impaired Petitioner's ability to appreciate the consequences of his actions; Petitioner's decision making function would have been impaired; and his thought processes would not have been sequential.

Again, from my perspective, *the sole issue of any consequence in this case boils down to whether trial counsel provided constitutionally inadequate representation by failing to discover and present at trial the testimony of Dr. Maletzky regarding the ECT treatment and the effect that it had, or would have had, on the Petitioner.* This issue in turn breaks down into two component parts; 1) Should trail [sic] counsel have discovered and presented this evidence, and 2) If presented, would this evidence have had a tendency to affect the results of Petitioner's trail [sic]? Petitioner has the burden of proof on these matters.

*It is clear from reading the affidavit of trial counsel as well as the deposition of Petitioner* that trial counsel saw the only real hope for acquittal on all charges at trail [sic] as having to turn on the ability to present some sort of a mental disease or defect defense. *Both trial counsel and the State had Petitioner evaluated and no such defense was forthcoming.*

*Given the critical focus on the question of the availability of a mental disease or defect defense as Petitioner's only hope at trial, there is no evidence in the record to tell us why Dr. Maletzky was not contacted* by trial counsel. It could be that Petitioner did not tell trial counsel about the ECT treatment and therefore counsel did not know to contact Dr. Maletzky. *That would be consistent with what trail [sic] counsel says in his affidavit.* It could be that counsel secured and read *the discharge summary from Pacific Gateway which is the last*

17 - OPINION AND ORDER

*document included in Ex. 106* and reasonably determined that this avenue was not worth pursuing. Petitioner has not shown to the court why no contact was made with Dr. Maletzky. It is his burden to show not only that this contact was not made, but that failure to make this contact was inadequate representation under the circumstances. He has not done this. *He has raised the question, but has not presented an answer that supports his claim.*

Assuming for the sake of argument that Petitioner had proven that constitutionally adequate trail [sic] counsel would have discovered and interviewed Dr. Maletzky, the question becomes whether Dr. Maletzky's testimony would have had a tendency to affect the result if presented at trial. I do not believe that it would have.

*It appears clear from reading the trial transcript* that to Judge Keys, the strongest evidence of Petitioner's state of mind at the time of the commission of the crimes was the transcripts of his interviews with the police which took place with [sic] an hour or two of the offences. *As Judge Keys stated in the October 27, 2000 transcript of trial at page 38, beginning at line 10 in response to trial counsel's Motion for Judgment of Acquittal after both sides had rested,* "In my mind the kidnapping charge is a slam dunk guilty. The robbery charge is a slam dunk guilty. The assault charge is a slam dunk guilty." *It is also clear that Judge Keys was relying on the transcripts of the police interviews with Petitioner when he found that the evidence of Petitioner's intent to kill was not sufficient given his confused statements to the police about this aspect of the case.*

The real question then is whether the testimony Dr. Maletzky would have given if called as a witness at trial would have had a tendency to affect the results by overcoming the strength of the transcripts of the interview of the Petitioner with the police. It seems inconceivable to me that this could be the case. *Dr. Maletzky's testimony, assuming that it would be as set forth in his affidavit, would have been significantly impeached by his statements in the Discharge Summary from Pacific Gateway that Petitioner was not psychotic nor significantly confused at the time of discharge.* It seems inconceivable to me that Judge Keys, or a jury for that matter, would have had a tendency to give Dr.

18 - OPINION AND ORDER

Maletzky's testimony of his opinion as to Petitioner's
state of mind at the time of the crimes any significant
weight *given the transcripts of the police interviews
conducted within a short time following the crimes.*

*Based on the testimony and exhibits introduced at trial,*
I find that Petitioner has failed to produce evidence
sufficient to carry his burden or [sic] proof on any of
the allegations in his Petition and I have entered a
Judgment in favor of the Defendant.

(Respt.'s Ex. 118, 3-4.)(Emphasis added.)

Clearly, the PCR court evaluated and considered the entire
record and Petitioner acknowledges it was reasonable for the PCR
court to consider trial counsel's affidavit. (#25, Petr.'s Mem. at
28.) The fact the PCR court does not discuss Dr. Kolbell's report
or the errors its existence reveals are not evidence the PCR court
ignored the report or the errors. It is well established that
state courts need not "address every jot and tittle of proof
suggested to them, nor need they 'make detailed findings addressing
all the evidence before them.'" *Taylor*, 366 F.3d at 1001 (9th Cir.
2004) (quoting *Miller-El*, 537 U.S. at 347). The Court's review of
the record leads to the conclusion the state PCR court's findings
are not objectively unreasonable in light of the evidence presented
in the PCR proceeding, and accordingly, they are presumed to be
correct. Petitioner has not presented clear and convincing
evidence to overcome this presumption. *See* 2254(e)(1).

C.    **Ineffectiveness Claim**

Petitioner alleges trial counsel was ineffective in failing to
make contact with Dr. Maletzky. Based on the findings summarized

19 - OPINION AND ORDER

above, the PCR trial court concluded Petitioner had not shown the failure to make contact with Dr. Maletzky constituted ineffective assistance of counsel. Nevertheless, the PCR trial court then assumed that counsel's failure to contact Dr. Maltezky was constitutionally inadequate and conducted a prejudice analysis. The PCR court concluded that Dr. Maletzky's testimony, as presented in his affidavit, would not have had a tendency to affect the results of the trial because his testimony would have been "significantly impeached by his statements in the Discharge Summary[,]" and would not have carried significant weight with the trial court.

Reviewing the record upon which the PCR court made its findings, this Court does not find that the state court acted unreasonably. While Dr. Maletzky's affidavit describes memory loss and confusion as potential lingering effects of ECT, Petitioner's medical records from Gateway include notations suggesting Petitioner had "only mild confusion" after a number of ECTs, and was "not significantly confused" on discharge. (#23, Supplemental Ex.; Respt.'s Ex. 117, Gateway records.) Dr. Maletzky's affidavit also describes impaired decision making and an inability to appreciate the consequences of one's actions following ECT, but suggests the ability to tell right from wrong may not have been affected. Dr. Maletzky did not address ECT and violent behavior, or ECT and drug intoxication. Petitioner's voluntary intoxication with Methamphetamines in the hours prior to the attack was

undisputed, and at sentencing the trial court clearly stated that Petitioner's psychological problems may make the court feel sorry for Petitioner but would not have changed the outcome of the trial. It was thus reasonable for the PCR court to conclude Petitioner failed to show prejudice.

Under *Strickland*, an ineffective assistance of counsel claim can be denied if a petitioner fails to prove either that counsel's representation was constitutionally deficient or that he suffered prejudice as a result. The PCR court concluded Petitioner proved neither. Accordingly, the PCR court decision denying Petitioner relief was neither contrary to, nor an unreasonable application of established federal law.

## CONCLUSION

Based on the foregoing, Petitioner's Amended Petition for Writ of Habeas Corpus (#24) is DENIED.

IT IS SO ORDERED.

DATED this _9_ day of April, 2009.


Owen M. Panner
United States District Judge

21 - OPINION AND ORDER